FILED
2023 Apr-27  AM 09:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER SMITH, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Case No.:** |
| | ) | |
| IMMANUEL HOME CARE, INC., | ) | |
| | ) | **JURY DEMANDED** |
| **Defendant.** | ) | |

## COMPLAINT

**COMES NOW** Plaintiff, Jennifer Smith ("Plaintiff" or "Smith"), by and through her undersigned counsel of record, and files this Complaint against Immanuel Home Care, Inc. (d/b/a Home Care Assistance of Huntsville) ("Defendant" or "Immanuel"). As grounds for this Complaint, Plaintiff states the following:

### JURISDICTION AND VENUE

1.      This is a suit authorized and brought to secure the protection of and to redress the deprivation of rights secured by the Americans with Disabilities Act of 1990, as amended, codified at 42 U.S.C. §12101 et seq., as amended (the "ADA"), Title VII of the Act of Congress known as the "Civil Rights Act of 1964," codified at 42 U.S.C. § 2000e et seq., as amended by the of the "Civil Rights Act of 1991," (collectively referred to as "Title VII"), and 42 U.S.C § 1981.

2.      Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and § 1343.

3.     The unlawful employment practices described herein were committed in Madison County, Alabama; as such, venue lies in the United States District Court for the Northern District of Alabama, Northeastern Division, pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4.     Smith is a citizen of the United States of America over the age of nineteen (19) years, and currently resides in Madison County, Alabama.

5.     Defendant is an employer, in the State of Alabama, within the meaning of 42 U.S.C. § 12111(5) in that it engages in an industry affecting commerce and employed fifteen (15) or more employees for the requisite duration under the ADA.

6.     During all times relevant to this Complaint, Defendant conducted business throughout Alabama, with a physical location in Madison County, Alabama, with an address of 127 Otter Trail, Huntsville, AL 35824.

7.     Defendant was Smith's employer during all times relevant to this Complaint.

## ADMINISTRATIVE EXHAUSTION

8.     Smith filed Charge of Discrimination No. 420-2022-02851 (the "Charge"), with the United States Equal Employment Opportunity Commission ("EEOC"), on July 26, 2022. (See **Exhibit A**).

2

9. Smith alleged discrimination based on her disability, her race, and retaliation for opposing conduct constituting discrimination.

10. The EEOC issued a Determination and Notice of Rights (the "RTS") for the Charge, which was received by Smith on January 26, 2023. (See **Exhibit B**).

11. This Complaint is filed within ninety (90) days of Smith's receipt of the RTS.

12. Smith has, thus, exhausted all administrative remedies available prior to filing this Complaint.

## FACTS

13. Smith is a disabled veteran.

14. Smith is a Caucasian female.

15. Smith suffers from post-traumatic stress disorder ("PTSD" or "Health Condition").

16. Smith's Health Condition is a qualifying disability under the ADA.

17. Smith disclosed her Health Condition in a pre-employment application submitted to Defendant.

18. During Smith's pre-employment interview with Defendant's co-owner, Tommy Anderson ("T. Anderson"), Smith, again, disclosed her Health Condition.

19. Defendant hired Smith on or about April 14, 2021, to work as a Client Care Manager ("Assigned Position").

3

20. Smith was and is qualified to perform the essential functions and duties of the Assigned Position.

21. On or about February 9, 2022, Smith returned to work from approved medical leave.

22. That morning, on or about February 9, 2022, Lillie Rogers ("Rogers"), an African American co-worker, unexpectedly burst into Smith's office and began verbally attacking Smith.

23. Gleria Anderson ("G. Anderson") entered Smith's office and witnessed Rogers' actions.

24. During Rogers' tirade, Rogers called Smith a "bougie white lady who thinks she's better than me."

25. Rogers' hostile actions and discriminatory statements adversely affected Smith's Health Condition.

26. On or about February 9, 2022, Smith sent an email to both T. Anderson and G. Anderson requesting help as Rogers' actions that morning were adversely affecting Smith's Health Condition.

27. Neither T. Anderson nor G. Anderson responded to Smith's email.

28. Defendant failed to engage Smith in an interactive discussion regarding her Health Condition or possible reasonable accommodations.

29.    On February 10, 2022, Smith emailed T. Anderson, again, advising him of her "PTSD" and further explaining that because of Rogers actions she "no longer feel[s] Safe at the office."

30.    In her February 10, 2022 email, Smith further stated, "I don't know if [Rogers] has issue with me because I'm white but I have dealt with others that do, and they act similarly."

31.    On February 10, 2022, T. Anderson sent an email response stating, "Lillie [Rogers] will not be in today, please come in to discuss."

32.    On February 10, 2022, Smith sent an email response stating, "I will come in the office today[.]"

33.    Later that morning, on February 10, 2022, Smith met with T. Anderson and G. Anderson.

34.    Shockingly, during the meeting on February 10, 2022, T. Anderson and G. Anderson terminated Smith's employment.

35.    Defendant, however, did not terminate Rogers.

36.    As a result of Defendant's conduct, Smith has been deprived of income and the benefits associated with her employment.

37.    The conduct described herein caused Smith emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

5

## COUNT I
## DISABILITY DISCRIMINATION
## UNDER THE ADA

38.    Smith is a disabled veteran who suffers from PTSD.

39.    Smith's Health Condition is a qualifying disability under the ADA.

40.    At all times relevant to this Complaint, Defendant was aware of Smith's Health Condition.

41.    Defendant hired Smith on or about April 14, 2021, to work as a Client Care Manager.

42.    Smith was and is qualified to perform the essential functions and duties of the Assigned Position.

43.    On or about February 9, 2022, Smith returned to work from approved medical leave.

44.    That morning, on or about February 9, 2022, Rogers, a co-worker, unexpectedly burst into Smith's office and began verbally attacking Smith.

45.    Rogers' hostile actions and discriminatory statements adversely affected Smith's Health Condition.

46.    On or about February 9, 2022, Smith sent an email to both T. Anderson and G. Anderson requesting help as Rogers' actions that morning were adversely affecting Smith's Health Condition.

47.    Neither T. Anderson nor G. Anderson responded to Smith's email.

48.    Defendant failed to engage Smith in a discussion regarding her Health Condition or possible reasonable accommodations.

49.    On February 10, 2022, Smith emailed T. Anderson, again, advising him of her "PTSD" and further explaining that because of Rogers actions she "no longer feel[s] Safe at the office."

50.    On February 10, 2022, T. Anderson sent an email response stating, "Lillie [Rogers] will not be in today, please come in to discuss."

51.    Later that morning, on February 10, 2022, Smith met with T. Anderson and G. Anderson.

52.    Shockingly, during the meeting on February 10, 2022, T. Anderson and G. Anderson terminated Smith's employment.

53.    Defendant, however, did not terminate Rogers.

54.    As such, based on Defendant's failure to terminate Rogers and Defendant's disregard for Smith's plea for help, Smith's Health Condition was, at minimum, a motivating factor in terminating Smith's employment.

55.    As a result of Defendant's conduct, Smith has been deprived of income and the benefits associated with her employment.

56.    The conduct described herein caused Smith emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

7

## COUNT II
## RETALIATION
## UNDER THE ADA

57. Smith is a disabled veteran who suffers from PTSD.

58. Smith's Health Condition is a qualifying disability under the ADA.

59. At all times relevant to this Complaint, Defendant was aware of Smith's Health Condition.

60. Smith was and is qualified to perform the essential functions and duties of the Assigned Position.

61. On or about February 9, 2022, Smith returned to work from approved medical leave.

62. That morning, on or about February 9, 2022, Rogers, a co-worker, unexpectedly burst into Smith's office and began verbally attacking Smith.

63. Rogers' hostile actions and discriminatory statements adversely affected Smith's Health Condition.

64. On or about February 9, 2022, Smith sent an email to both T. Anderson and G. Anderson requesting help as Rogers' actions that morning were adversely affecting Smith's Health Condition.

65. Smith exercised a protected right by attempting to engage Defendant in discussions regarding how the work environment adversely affected her Health Condition and potential reasonable accommodations.

66.    Neither T. Anderson nor G. Anderson responded to Smith's email.

67.    On February 10, 2022, Smith emailed T. Anderson, again, advising him of her "PTSD" and further explaining that because of Rogers actions she "no longer feel[s] Safe at the office."

68.    Smith, again, engaged in protected activity by attempting to engage Defendant in discussions regarding how the work environment adversely affected her Health Condition and potential reasonable accommodations.

69.    On February 10, 2022, T. Anderson sent an email response stating, "Lillie [Rogers] will not be in today, please come in to discuss."

70.    Later that morning, on February 10, 2022, Smith met with T. Anderson and G. Anderson.

71.    Shockingly, during the meeting on February 10, 2022, T. Anderson and G. Anderson terminated Smith's employment.

72.    Defendant terminated Smith's employment because of Smith's participation in a protected right by attempting to engage Defendant in discussions regarding how the work environment adversely affected her Health Condition and potential reasonable accommodations.

73.    As a result of Defendant's conduct, Smith has been deprived of income and the benefits associated with her employment.

74. The conduct described herein caused Smith emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

## COUNT III
## RACE DISCRIMINATION
## IN VIOLATION OF TITLE VII

75. Smith is a Caucasian female.

76. Defendant hired Smith on or about April 14, 2021, to work as a Client Care Manager.

77. On or about February 9, 2022, Rogers, an African American co-worker, unexpectedly burst into Smith's office and began verbally attacking Smith.

78. G. Anderson entered Smith's office and witnessed Rogers' actions.

79. During Rogers' tirade, Rogers called Smith a "bougie white lady who thinks she's better than me."

80. Rogers' hostile actions and discriminatory statements adversely affected Smith's Health Condition.

81. In Smith's February 10, 2022, email, Smith stated, "I don't know if [Rogers] has issue with me because I'm white but I have dealt with others that do, and they act similarly."

82. On February 10, 2022, T. Anderson sent an email response stating, "Lillie [Rogers] will not be in today, please come in to discuss."

83. Later that morning, on February 10, 2022, Smith met with T. Anderson and G. Anderson.

84. Shockingly, during the meeting on February 10, 2022, T. Anderson and G. Anderson terminated Smith's employment.

85. Defendant, however, did not terminate Rogers.

86. As such, based on Defendant's failure to terminate Rogers, Smith's race was, at minimum, a motivating factor in terminating Smith's employment.

87. As a result of Defendant's conduct, Smith has been deprived of income and the benefits associated with her employment.

88. The conduct described herein caused Smith emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

## COUNT IV
## RETALIATION IN
## VIOLATION OF TITLE VII

89. Smith is a Caucasian female.

90. Defendant hired Smith on or about April 14, 2021, to work as a Client Care Manager.

91. On or about February 9, 2022, Smith returned to work from approved medical leave.

92. That morning, on or about February 9, 2022, Rogers, an African American co-worker, unexpectedly burst into Smith's office and began verbally attacking Smith.

93. G. Anderson entered Smith's office and witnessed Rogers' actions.

94. During Rogers' tirade, Rogers called Smith a "bougie white lady who thinks she's better than me."

95. Rogers' hostile actions and discriminatory statements adversely affected Smith's Health Condition.

96. On or about February 9, 2022, Smith sent an email to both T. Anderson and G. Anderson requesting help as Rogers' actions that morning were adversely affecting Smith's Health Condition.

97. Neither T. Anderson nor G. Anderson responded to Smith's email.

98. On February 10, 2022, Smith emailed T. Anderson, again, advising him of her "PTSD" and further explaining that because of Rogers actions she "no longer feel[s] Safe at the office."

99. In her February 10, 2022, email, Smith further stated, "I don't know if [Rogers] has issue with me because I'm white but I have dealt with others that do, and they act similarly."

100. Smith exercised a protected right when she opposed discriminatory conduct which was in violation of Title VII.

12

101.   On February 10, 2022, T. Anderson sent an email response stating, "Lillie [Rogers] will not be in today, please come in to discuss."

102.   Later that morning, on February 10, 2022, Smith met with T. Anderson and G. Anderson.

103.   Shockingly, during the meeting on February 10, 2022, T. Anderson and G. Anderson terminated Smith's employment.

104.   Defendant, however, did not terminate Rogers.

105.   Defendant terminated Smith's employment because of Smith's participation in protected activity by complaining about Rogers' hostile and discriminatory conduct towards Smith which is in violation of Title VII.

106.   As a result of Defendant's conduct, Smith has been deprived of income and the benefits associated with her employment.

107.   The conduct described herein caused Smith emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

## COUNT V
## RACE DISCRIMINATION
### (42 U.S.C. § 1981)

108.   Smith is a Caucasian female.

109.   Defendant hired Smith on or about April 14, 2021, to work as a Client Care Manager.

110. On or about February 9, 2022, Rogers, an African American co-worker, unexpectedly burst into Smith's office and began verbally attacking Smith.

111. G. Anderson entered Smith's office and witnessed Rogers' actions.

112. During Rogers' tirade, Rogers called Smith a "bougie white lady who thinks she's better than me."

113. Rogers' hostile actions and discriminatory statements adversely affected Smith's Health Condition.

114. In Smith's February 10, 2022, email, Smith stated, "I don't know if [Rogers] has issue with me because I'm white but I have dealt with others that do, and they act similarly."

115. On February 10, 2022, T. Anderson sent an email response stating, "Lillie [Rogers] will not be in today, please come in to discuss."

116. Later that morning, on February 10, 2022, Smith met with T. Anderson and G. Anderson.

117. Shockingly, during the meeting on February 10, 2022, T. Anderson and G. Anderson terminated Smith's employment.

118. Defendant, however, did not terminate Rogers.

119. As such, based on Defendant's failure to terminate Rogers, Smith's race was, at minimum, a motivating factor in terminating Smith's employment.

14

120.    As a result of Defendant's conduct, Smith has been deprived of income and the benefits associated with her employment.

121.    The conduct described herein caused Smith emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

## COUNT VI
## RETALIATION IN
## VIOLATION OF 42 U.S.C. § 1981

122.    Smith is a Caucasian female.

123.    Defendant hired Smith on or about April 14, 2021, to work as a Client Care Manager.

124.    On or about February 9, 2022, Smith returned to work from approved medical leave.

125.    That morning, on or about February 9, 2022, Rogers, an African American co-worker, unexpectedly burst into Smith's office and began verbally attacking Smith.

126.    G. Anderson entered Smith's office and witnessed Rogers' actions.

127.    During Rogers' tirade, Rogers called Smith a "bougie white lady who thinks she's better than me."

128.    Rogers' hostile actions and discriminatory statements adversely affected Smith's Health Condition.

129. On or about February 9, 2022, Smith sent an email to both T. Anderson and G. Anderson requesting help as Rogers' actions that morning were adversely affecting Smith's Health Condition.

130. Neither T. Anderson nor G. Anderson responded to Smith's email.

131. On February 10, 2022, Smith emailed T. Anderson, again, advising him of her "PTSD" and further explaining that because of Rogers actions she "no longer feel[s] Safe at the office."

132. In her February 10, 2022, email, Smith further stated, "I don't know if [Rogers] has issue with me because I'm white but I have dealt with others that do, and they act similarly."

133. Smith exercised a protected right when she opposed discriminatory conduct which was in violation of 42 U.S.C. § 1981.

134. On February 10, 2022, T. Anderson sent an email response stating, "Lillie [Rogers] will not be in today, please come in to discuss."

135. Later that morning, on February 10, 2022, Smith met with T. Anderson and G. Anderson.

136. Shockingly, during the meeting on February 10, 2022, T. Anderson and G. Anderson terminated Smith's employment.

137. Defendant, however, did not terminate Rogers.

16

138. Defendant terminated Smith's employment because of Smith's participation in protected activity by complaining about Rogers' hostile and discriminatory conduct towards Smith.

139. As a result of Defendant's conduct, Smith has been deprived of income and the benefits associated with her employment.

140. The conduct described herein caused Smith emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

**WHEREFORE,** Plaintiff respectfully requests this Court grant Plaintiff the following:

A. Back pay for lost income and any other compensatory damages;

B. Reinstatement or front pay if the Court determines reinstatement is impractical;

C. Liquidated damages equal to the amount of back pay;

D. Punitive damages;

E. A reasonable attorneys' fee;

F. Plaintiff's costs and expenses;

G. Interest on all monies owed; and

H. Any and all other relief the Court deems just and appropriate.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.**

Respectfully submitted on this the 26th day of April 2023.

17

Respectfully submitted,

s/ *Meagan M. Corcoran*
Meagan M. Corcoran (ASB-4976-D34B)
Anthony D. Michel (ASB-6809-O64M)
*Attorneys for Plaintiff*

**Michel | King**
505 20th Street North, Suite 1650
Birmingham, Alabama 35203
Telephone: (205) 980-5700
Facsimile:  (205) 994-2819
Meagan@wmalabamalaw.com
Anthony@wmalabamalaw.com

**DEFENDANT WILL BE SERVED VIA PROCESS SERVER AT THE FOLLOWING ADDRESS:**

Immanuel Home Care, Inc.
c/o r/a Gleria Anderson
127 Otter Trail
Huntsville, AL 35824

s/ *Meagan M. Corcoran*
Attorney for Plaintiff

18